THE VILLA RICA LUMBER COMPANY *v.* PARATAIN.

1. While a married woman cannot in any manner become a surety for her son-in-law so as to bind herself, or her property, for the payment of his debts, yet she may extinguish his debts, or cause them to be extinguished, on her own credit, with a mortgage upon her property as security for the performance of her own contract. *Freeman* v. *Coleman*, 86 *Ga.* 590; *Finch* v. *Barclay*, 87 *Ga.* 393. A note and mortgage given by a married woman to a creditor of her son-in-law in extinguishment of a debt from the latter to this creditor, and for the purpose of raising money to extinguish his debts to other creditors, will bind her.
2. The evidence in the present case, taken all together and fairly construed, negatives any theory of suretyship, the same showing that the debts of the son-in-law were not secured, but extinguished,

and that no new debt for the consideration of the note and mortgage arose or was created against him as principal or in any other character or relation. In *Strauss* v. *Friend*, 73 *Ga.* 782, the note and mortgage were made directly to the son-in-law, without consideration, and were held by him until after maturity and then transferred, the purchaser being chargeable with notice of the want of consideration.                                          *Judgment reversed.*

April 3, 1893. Argued at the last term.

Complaint. Before Judge JANES. Paulding superior court. January term, 1892.

The Villa Rica Lumber Company sued Mrs. Paratain upon a mortgage note. Defendant pleaded the general issue, no consideration, and that the note and mortgage were executed and delivered for a debt due plaintiff by Holcombe, her son-in-law, she being a married woman. The case was submitted to the judge without a jury. He held that the note sued on was given as security for the debt of another and was therefore void, defendant being a married woman. Plaintiff excepted.

The note was dated August 24, 1889, due November 15, 1889, payable to plaintiff or bearer, for value received, for $170, and contained a mortgage on certain land. Holcombe testified: I owed plaintiff $290, and got my sister Angie and my mother-in-law to give their notes for that amount, secured by mortgages on their land. Defendant got no benefit of the consideration of the note sued on. I had been dealing with plaintiff before the note was executed and delivered to it. It furnished me itemized statement of the dealings between us before the note was given. After this statement was handed me, Robertson was at my house and figured on this piece of paper and added the amounts together, which made the $290 I owed at that time. I had been running a saw-mill prior to the execution of the note, and selling lumber to plaintiff. Had bad luck in various ways, owed plaintiff about $70 for goods purchased at their commissary, and had to shut down the mill

about the middle of August, 1889. Applied to plaintiff for aid, which it declined to give. Then stated to plaintiff I could get my sister and mother-in-law to give their notes secured by mortgages, for the amount of my indebtedness, if plaintiff would advance the money and pay off the indebtedness, which proposition plaintiff accepted, paid my hands some money; advanced some money for freight on my engine before the note was executed and delivered, and the balance of the money was not advanced until after the note was executed and delivered. The figures made by Robertson on the paper which I exhibit represent the different amounts I owed and which I wished plaintiff to pay, being the amounts of the two notes. When the notes were executed and delivered to plaintiff, and the amounts I owed presented and added together, they lacked ninety-five cents of amounting to as much as the notes, and plaintiff then paid me the ninety-five cents. This was about August 29, 1889. The itemized statement of the dealings between me and plaintiff was correct up to August 17, 1889, when I was due plaintiff a balance of about $70. I bought nothing more from plaintiff until after the notes were executed and delivered and my said debts paid.

Robertson testified: He was a member of the plaintiff firm. The note was not given to plaintiff as security for a debt due it by Holcombe. Holcombe had been buying supplies for his family and hands and stock from plaintiff, and plaintiff had been buying his lumber. About the middle of August, 1889, Holcombe had to shut down his mill because he could not pay his debts, nor get his engine, and on August 17th, plaintiff quit furnishing him supplies. Then he stated to plaintiff he could get his sister and mother-in-law to give plaintiff their notes secured by mortgages, if plaintiff would advance the money and pay his debts, which plaintiff

agreed to do; and the notes and mortgages were executed and delivered. At that time Holcombe owed plaintiff about $70 for supplies already furnished. The notes were delivered on August 29th. The note on Angie Holcombe was for the $70 and for some money plaintiff had already advanced for freight on the engine and for Holcombe's hands. The note of defendant was for money which plaintiff afterwards advanced. At the time the notes were delivered, plaintiff did not advance the money but gave its obligations for different amounts to the different parties, and on its next regular pay-day advanced the money in accordance with these obligations. The consideration of defendant's note was $90 paid one McClung for timber for Holcombe, money paid his hands, and money paid for having his engine repaired, all of which was advanced after the note was executed and delivered. Plaintiff had no claim against Holcombe for any of the money so advanced, and it was distinctly understood that it was not to look to him for said money, that it would advance the money on the notes and expect the makers to pay them. Plaintiff never saw the makers until after the notes were executed, Holcombe representing them in the transaction and in directing where the money should be paid which was to be advanced. After the notes were delivered and the amounts of Holcombe's debts, as presented to plaintiff, were added up, it was found that the notes amounted to ninety-five cents more than the debts which were to be paid, and plaintiff then advanced the ninety-five cents to Holcombe. Other witnesses testified for plaintiff, corroborating Robertson.

W. C. HODNETT and W. E. SPINKS, for plaintiff.

J. J. NORTHCUTT and W. K. FIELDER, for defendant.