MICKLEBERRY & McCLENDON *v.* O'NEAL.

1. Averments in a motion for a new trial, that the verdict is contrary to certain specified charges of the court, are, in effect, no more than complaints that the verdict is contrary to law.

2. Although the value of goods sold to an agent upon his own credit alone may, under certain circumstances, be recovered from the principal when disclosed, this, under the facts of the present case, could not be done unless the principal actually received and used, or in some way got the benefit of such goods.

3. According to the principle laid down by this court in the case of *First National Bank* v. *Bayless,* 96 *Ga.* 684, a deed made by a wife to secure a debt not actually her own, but due by her husband, is not binding upon her, although such deed may have been made for the purpose and with the intention of effecting a compromise of what she regarded as a doubtful claim against her property.

4. This principle is also applicable where the deed in question, it being one entire contract, was made partly to secure a debt due by the wife and also a debt due by the husband.

5. Where error is assigned upon various refusals of the court to charge requests submitted, and the entire charge is not brought up to this court, but instead thereof, a certificate by the trial judge to the effect that all the issues involved were fully and fairly submitted and as favorably to the plaintiffs in error as the law authorized, and that the requests refused were, so far as legal, covered by the general charge, this court is unable to determine whether such refusals were erroneous or not.

6. The complaints in the motion for a new trial that certain charges given by the court were unwarranted by the evidence are not well founded; there was sufficient evidence to authorize the verdict which the jury rendered, and this court therefore will not set it aside after its approval by the trial judge.

December 13, 1895.

Equitable petition.   Before Judge Lumpkin.   Fulton superior court.   March term, 1895.

The petition of Dinah O'Neal alleged:   On March 31, 1890, she made to W. H. C. Mickleberry and J. J. and J. T. McClendon a deed, copy of which is attached, for the alleged consideration of $3,288.   She received no sum whatever from them.   Her husband owed them, said parties then doing business under the firm name of Mickleberry & McClendon, a large sum, and in order to get it they represented to her husband that it would be to her interest to settle this indebtedness, as it would assist him in some other undertaking, and he persuaded her to settle this indebtedness by deeding said property to said firm.   The alleged vendees, in order to procure her deed to the property, offered to take up a mortgage that was already on the land for $1,246 due the Atlanta Banking Company, and to

take a deed from her for enough of her land to cover both the sums thus assumed · and also the debt of her husband. This was done. The deed is void; it was given for the settlement of her husband's debt, and the vendees knew it when they accepted the deed; it is a cloud on her title, etc. She prayed for cancellation of the deed, and that the title to the property be decreed to be in her absolutely; for injunction; and that the sum paid the Atlanta Banking Company be decreed a lien on the property in favor of said vendees, and that they stand in the same relation to the property as the banking company whose lien they took up. Process was prayed against the McClendons and against the heirs of Mickleberry, who is dead. The deed, copy of which was attached, was dated March 31, 1890, and was upon an expressed consideration of $3,288.

Defendants answered: On July 3, 1888, petitioner and defendants made a contract, copy of which is attached, by which she agreed, for a consideration therein stated, to make and deliver to defendants certain promissory notes therein described, and secure the same by a mortgage therein mentioned. She did make and deliver the notes and mortgage according to the contract. When they became due she was unable to pay them, and in settlement of them made to defendants the deed in question. Defendants carried out in good faith all the obligations they assumed in said contract, and by reason thereof and of the execution of the contract, there is an accord and satisfaction of petitioner's claim and she is thereby prevented from questioning the consideration of said deed. The contract, copy of which is attached, was dated July 3, 1888. It recited that whereas Mickleberry & McClendon agreed in 1887 to furnish Hiram O'Neal such an amount of groceries and foodstuffs as he might desire for the purpose of running a store, etc., said O'Neal agreeing to secure the payment therefor by a mortgage on certain realty in Atlanta; and whereas O'Neal, in pursuance of said agreement, thereafter

made to them a mortgage dated July 30, 1887, upon the real estate therein described, he believing at the time that it belonged to him; and whereas there is now due to Mickleberry & McClendon $1,219 as secured by said mortgage; and whereas O'Neal, at the time the goods were furnished and the mortgage given, was in the actual possession of said realty and exercising acts of ownership over it, but it now appears that on or about December 10, 1885, he executed to his wife Dinah a deed which, through mistake and without consideration, included with other property said above mentioned realty, he having intended to deed to her other and adjoining real estate only, for which there was consideration to her, and Mickleberry & McClendon being mortgage creditors for value without actual notice of said deed; and whereas O'Neal did not own or control the store at which place a part of the goods so purchased by him were used and sold, but the store was run by and belonged to Dinah O'Neal, and he was acting only as her agent in purchasing the goods, which fact was unknown to Mickleberry & McClendon at the time of the sale of the goods and of the taking of the mortgage; and whereas Mickleberry & McClendon have instituted proceedings to foreclose the mortgage, and have or are about to bring suit against Dinah O'Neal for the recovery of the amount of goods furnished by them to the store, $1,002.57, besides interest; and whereas the realty in the mortgage described is claimed by Mickleberry & McClendon to be subject to their mortgage, and Dinah O'Neal may be liable for the $1,002.57, which is also included in the mortgage; and whereas there are various other liens on said realty and on the other realty adjoining the same now owned by Dinah O'Neal, to wit, in favor of N. J. Hammond for about $130, of the Willingham Lumber Company $136.13, of Wilson & Company or their assignees $125, of the Atlanta Banking Company $1,050 secured by mortgages of Dinah and Hiram O'Neal amounting net to $1,010, in favor of J. S. McClendon $185, and of Robert

Harbison, attorney of Dinah O'Neal, $115; and whereas Mickleberry & McClendon have agreed and do hereby agree to furnish money for and pay off all said claims, except that of the Atlanta Banking Company, and to assume and pay off that as it matures, and that portion thereof already matured, and thus to relieve all of said realty from all of said claims, and to dismiss their suit or suits: Therefore, in consideration of the foregoing and in order to avoid further litigation and remove all clouds upon the title of Dinah O'Neal to all of said realty (it being also agreed that the mortgage deed by Hiram O'Neal to the banking company to secure part of its claim was executed by him without it having notice of the realty embraced therein being included in said previous deed of Hiram to Dinah O'Neal), Dinah O'Neal agrees to settle all these matters by executing to Mickleberry & McClendon four notes, dated July 3, 1888, each for $775 principal, due three years after date, and also coupon interest note for the interest thereon, and to give a mortgage to Mickleberry & McClendon on all of her said realty described in said deed of Hiram O'Neal to her, Mickleberry & McClendon hereby agreeing, as part of the consideration of said mortgage now given by Dinah O'Neal, to cancel of record the mortgage which was previously given them by Hiram O'Neal, as well as to pay off or otherwise dispose of all the debts above provided to be paid or assumed by them, and to transfer and turn over to Dinah O'Neal as her own property, as part of the consideration for said principal notes and mortgage (to the amount of $140 thereof) four mules heretofore bought by them at sale under the chattel mortgage given them by Hiram O'Neal.

There was a verdict for plaintiff, and that the deed described in the petition be cancelled; further that plaintiff is indebted to defendants $1,291.72 principal, and $721.75 interest to date, and that the same is a charge on the land

and to be enforced against it by execution.     Defendants moved for a new trial, which was denied, and they excepted.

The motion was upon the grounds that the verdict was contrary to law and evidence, and to specified portions of the charge; and that the court erred:

In charging: "If a person lends or advances money to a married woman, knowing that she borrows it to pay a debt of her husband, and he aids or has knowledge of a scheme or arrangement by which a loan is made upon the security of her property and the delivery of the money to her, or through the use of her name, as a matter of form, and used for the purpose of paying off the debt of her husband; if such be the facts and you shall believe from the evidence that such were the facts, the debt would not be the debt of the wife and the mortgage given by her to the lender to secure the same would be void."     Alleged to be error, because not warranted by the evidence.

In charging, as to the settlement between petitioner and Mickleberry & McClendon: "But if such settlement was not made for the purpose of relieving petitioner or her estate, but was made as a method of, and for the purpose of, settling the debts of her husband, it would not be binding upon her."     Error because not warranted by the evidence.

In charging: "If you believe from the evidence that Mickleberry & McClendon furnished goods amounting to $1,002.57 mentioned in contract of July 3, 1888, to Hiram O'Neal, believing at the time that he was the real purchaser, and it turned out afterwards that he did not purchase the goods for his own use but really purchased them for his wife who was conducting a store, and that she received and used the goods in her business, though unknown at the time to Mickleberry & McClendon when they sold, then Mickleberry & McClendon might have recovered from petitioner the purchase price of these goods, in so far as they were unpaid, or if unpaid, when this fact came to their knowledge, though credit was given to the agent; and if

petitioner conveyed the land in question partly in payment of this debt, if she really received the goods, then to this extent the consideration of the contract, and the subsequent conveyance, would be valid and binding upon her." It was error to assert in said charge the condition, "if she really received the goods," instead of saying that if defendants believed and claimed in good faith that she really received the goods, and that she compromised this claim of the defendants in the contract of July 3, 1888.

In charging: "The deed in this case, which is now attacked and sought to be sustained, is one entire conveyance. If you believe that a part of the consideration of this deed was valid and binding, but that another part, and a considerable part, was not valid, resting upon an effort to pay the husband's debt by the wife, if such be the facts, the deed could not stand, but it would be your duty to set it aside. If the entire consideration is valid, and you believe under the evidence that the deed rested upon a lawful and valid consideration, then it would be your duty to sustain the deed." Error, in not instructing the jury more definitely what proportion of the consideration must be invalid in order to authorize the setting aside of the deed; and in making it a condition of sustaining said deed, that the jury find the entire consideration to be valid, under which instruction they would not be authorized to sustain the deed even if they believed that all the consideration except a trifling sum was valid.

In refusing to give in charge the following as requested:

"If the defendants had reason to believe, either from the conduct or sayings of petitioner, that Harbison was her attorney at law in the matter of entering into the settlement, and they did in good faith believe him to be such, and if the jury further believe that the recitals of fact in the draft of the settlement submitted to them by Harbison were true, and if you further believe that the petitioner consented to the same, and they signed the same with no notice that she

did not consent, or without any evidence that she did not consent, then the settlement is binding upon her.

"If the jury should, under the evidence, disregard the settlement of July 3, 1888, then the petitioner must surrender whatever fruits she received under said settlement; and any money or thing paid to her by defendants under said settlement must be restored to them, with interest from the time of payment. And any money paid by the defendant under said settlement to remove clouds upon the title of her lands is to be restored by her to them.

"If there is a claim against the husband which is a cloud upon the title of the wife, and she pays the claim in order to clear her title and thus benefit herself, this is not such payment of the debt of the husband as the law forbids. In this case the consideration moves to herself and she is herself benefited.

"A married woman may settle a doubtful claim, and if she does so the settlement will be binding upon her.

"From the terms of the deed made by petitioner to the Atlanta Bank and Insurance Co., Dinah O'Neal admitted that Hiram O'Neal owned some land on the south of her lot.

"If the parties made a settlement of the matters here in controversy, and the defendants acted in good faith in the same, then the other party cannot set aside this settlement, except for good cause set out in her pleadings; and further, she must apply to correct said settlement or set it aside within a reasonable time.

"The sole attack made upon this settlement is, that the only consideration for same received by plaintiff was the payment of debts of her husband. She can succeed upon no other ground, as she relies on no other ground. And if the defendants in good faith claimed that she was liable for the debts mentioned in the settlement, and she compromised this claim, then such a compromise is binding upon her, even if the debts were in fact those of her husband.

4

In a note to the grounds of the motion the judge states:. "An examination of the entire charge will, I think, show that the issues were fully and fairly submitted and as favorably to defendants as the law authorized. Isolated sentences must be taken in connection with the context and general charge. The requests refused were, so far as legal, covered by the general charge." The charge of the court is not in the record, nor is it specified in the bill of exceptions as material to be transmitted.

*John C. Reed* and *Simmons & Corrigan*, for plaintiffs in error. *Mayson & Hill*, contra.

ATKINSON, Justice.

The questions of practice made by the record in this case do not require further consideration than as expressed in the head-notes.

Hiram O'Neal conveyed to his wife the premises in dispute, as she claims, in exchange for certain property to which she held the title and which was her separate estate. They were engaged, each independently of the other, in business, he in the business of grading streets and town lots, and she in running a small store. In the conduct of his business he bought certain goods and incurred certain indebtedness to the defendants, in which she had no interest. Some of the goods bought by him were brought to her store for convenience in delivering them to the laborers employed by him in his business, he using a part of the store occupied by her as a commissary. At the time Hiram O'Neal conveyed to his wife the property in controversy, it was subject to a lien for certain moneys advanced to her husband. He failed to pay the defendants the sum due them for goods, became otherwise seriously involved, and then induced her to make the conveyance now sought to be set aside, they, the defendants, paying off the lien above referred to, and receiving the conveyance in settlement of the amount thus advanced and also of the sums for which her husband was

indebted to the defendants. Afterwards she filed the proceeding under which the questions now here for review arose, and prayed that the conveyance to the defendants be set aside, upon the ground that it was made in payment of her husband's debt, and offering to submit to a decree imposing upon the property involved a lien in favor of the defendants to the extent of the sum advanced by them in discharging the lien above referred to. It was insisted by the defendants that the property conveyed to them was really the property of Hiram O'Neal, and not the property of his wife, and therefore the conveyance to them was good any way; that the whole transaction as between the husband and wife was colorable merely, and that if this were not true, then in making the purchase of the goods he was really her agent, that the debt was her own and not his, and therefore the conveyance should be upheld. We have carefully examined the evidence which comes to us in the record, and are unable to find anything which would seem to satisfactorily impeach the *bona fides* of the transaction between these parties. Even a husband and wife in their dealings with each other may be honest, and however closely transactions between them should be scanned, they are not to be impeached upon suspicion alone; and hence we are not disposed to interfere with the circuit judge in refusing to set aside the verdict, upon the ground that the transaction was fraudulent. A husband may be the agent of his wife. If he professes to act as her agent, those dealing with him are bound to inquire as to his authority to act for her. They may both occupy the same house. The law rather encourages such a course. She may even permit him to store his goods in her house without subjecting her separate estate to the payment of his debts, and without incurring the danger of having him treated as her general agent to buy. In the present case, while there is ample evidence in the record showing the sale of the goods by the defendants to Hiram O'Neal, and while it is claimed by them that in a general

sense the goods were sold for use in the store of his wife, it is abundantly shown that she had no connection with the business in which the goods were used; had not authorized him to buy them in her name; had no notice that he professed to act as her agent in the matter, and had never gotten or taken the benefit of the purchases. The credit was extended to him alone, and hence this is not a case for holding her as an undisclosed principal. Before she can be bound by his act, he must really act for her. If an agent profess to act for himself, but in the consummation of a given transaction really acts for and on account of another who knowingly receives the benefit of the transaction, or who without the knowledge of the other party has authorized the professed agent to contract for him, when the fact of agency is discovered, the person to whom the obligation of the undertaking is due may resort to the undisclosed principal for redress. In the present case, however, the jury upon proper instructions and satisfactory evidence found adversely to the contention of the defendants that the husband of the plaintiff was her agent, and we are not disposed to interfere.

A married woman, notwithstanding her practical emancipation by the act of 1866 and the provisions of our law which recognize her separate civil rights, is nevertheless under the disability of being unable to enter into any agreement by which she either assumes or becomes answerable for the debts and defaults of her husband, or by which she undertakes to convey her own property in satisfaction or extinguishment of his debts. No contract, however solemn may be the form of its execution, nor how positive its recitals, if entered into for either of these purposes, creates a charge upon her estate. With respect to such matters, she is under a disability imposed by law which renders her unable, however willing she may be, to contract, and of which she cannot by any agreement divest herself; and hence, wanting the capacity to convey her estate for these pur-

poses, the agreement is wanting in the prime prerequisite to its legal execution: and that is, a person able to contract. In such transactions, the law, as in cases of usury and in all others where a contract is denounced by express legislative enactment, will look beneath the superficial exterior and determine for itself whether the contract, seemingly legal, is based upon an illegal consideration, or is executed in furtherance of a scheme prohibited by law. The law in such matters will not permit a wife to conclude herself by deed, but will look to the bottom of the transaction and grant relief without reference to the degree of solemnity which may attend upon the execution of the instrument by which it is sought to carry such agreements into execution. The principle here contended for is clearly stated in the case of *First National Bank* v. *Bayless*, 96 *Ga.* 684. In that case it was held by this court, that a wife's property could not be subjected to the payment of her husband's debts, even though she executed a mortgage upon her own property under the impression that it was in some way subject to such debt, and in fact executed the instrument for the purpose of effecting a compromise of a doubtful claim against her own estate.

In the present case the deed in question was executed by her as an entire transaction, the vendee undertaking to and actually discharging an encumbrance upon the property purchased by her from her husband, and which encumbrance became, not by assumption of his debts but by relation, a legal charge upon her estate. Had this been the entire consideration, the conveyance could have been upheld as valid. But the real object of the conveyance was to appropriate the value of the property conveyed, in excess of the amount represented in the encumbrance discharged, to the payment of the sums due by the husband of the vendor to the vendee, thus conveying her estates partially in satisfaction of the husband's debt. The deed is thus an entire transaction. As a conveyance of title it cannot be upheld,

because of the impossibility of separating that which is legal from that which is illegal. It is not the case of a mortgage given to secure several debts, some of which are legal and some illegal, and in which that which is legal may be cut off from that which is illegal; but it is a case in which the whole transaction is so infected with the virus of illegality, that there is no possibility of upholding the deed executed in pursuance of it as a conveyance of title, and the most that can be done is to award, as was done in this case, that in so far as the plaintiff has extinguished that portion of the debt legally due by the wife, it be made a charge against her estate.        *Judgment affirmed.*