## JOHNSTON *v.* GULLEDGE.

1. The trial judge did not err in instructing the jury to the following effect: If a promissory note, owned by a wife, is given in pledge to secure a debt which is in part that of the wife and in part that of her husband, and such parts are readily ascertainable, the pledge is a valid one as to the part of the debt which is due by the wife, and the pledgee is entitled, when due, to recover from the maker the amount expressed in the note.

2. When the maker of such a note has in good faith paid it, he is entitled to the performance of the obligations which the payee undertook as the consideration for the same.

3. Whether the pledgee, after collecting the note, has made proper application of the proceeds does not concern the maker.

4. When it does not appear that a request to charge was made in writing, a complaint that the trial judge erred in refusing such request will not be considered.

5. The evidence sustained the verdict, and no error was committed in overruling the motion for a new trial.

Submitted May 1,— Decided July 22, 1902.

Equitable petition. Before Judge Reagan. Upson superior court. September 4, 1901.

*Worrill & Ridgsdill* and *Allen & Tisinger*, for plaintiff in error. *R. T. Daniel* and *O. H. B. Bloodworth*, contra.

LITTLE, J. The defendant in error by his petition duly filed prayed that Mrs. Johnston be required to execute and deliver to him good and sufficient titles in fee simple to certain land in Monroe county, this State, which he fully described. The following facts are made to appear by the evidence: Gulledge purchased from Mrs. Johnston the land which is the subject-matter of his petition, agreeing to pay therefor the sum of $650, for which he gave two notes, each for $325, one to become due November 1, 1897, and the other November 1, 1898, payable to "M. C. Johnston, or order." The first of these notes he paid to Mrs. Johnston when due. The second was deposited as collateral with the Griffin Savings Bank, to secure the payment of three notes for $78.31 each, signed by Mrs. Johnston, which were in renewal of a note for $209.77, signed by herself, her husband, and her son. She claimed that this original note for $209.77 was not her debt, but that of her husband. She further claimed that she did not authorize any one to pledge the second note given to her by Gulledge, as collateral to secure the payment of these notes, and she notified Gul-

ledge not to pay his note to the bank.     After its maturity, however, the bank demanded payment from Gulledge, and he paid it. Mrs. Johnston claims that the payment made under these circumstances was not a valid payment of the note, and that Gulledge owes her the amount expressed in the second note, with interest thereon; and she avers her readiness, upon the payment of this sum, to make Gulledge title to the land, but, until such payment, she insists that no obligation rests on her to convey it to him. The facts in relation to the execution of the original note for $207.77, and the deposit of the Gulledge note to secure the payment of the renewal notes above referred to, with the Griffin Savings Bank, as we obtain them from the record, are as follows: Johnston, the husband of the defendant, was engaged in mercantile business in the city of Griffin, as was also Mr. Blakely, president of the Savings Bank. There were mutual accounts between the parties. In adjusting these accounts it was found that Johnston owed Blakely $62.27. Then the note of $209.77 was executed by Mrs. Johnston, her husband, and her son, C. H. Johnston Jr. This note was taken to the Griffin Savings Bank and discounted, and the proceeds, $187.27, were placed to the credit of Mrs. Johnston at the bank. Mrs. Johnston was not present at the bank, nor did she personally procure the note to be discounted. Her husband took the note to her, and she signed it. He then delivered it to the bank, with certain collateral, which was subsequently withdrawn at the time the renewal notes were given, and the Gulledge note placed with the bank as collateral for these renewal notes. The Gulledge note had theretofore been indorsed by Mrs. Johnston. She testified, however, that she did not receive the money, but that her husband did; that the indorsement was not put on the note for the purpose of using it at the bank; and that she had never borrowed any money from the bank. There also appeared in the evidence an original letter written by Mrs. Johnston to J. P. Nichols, president of the Griffin Banking Company, in which she stated that she had on that date, January 21, 1897, negotiated a loan with the Savings Bank of Griffin for $209.77, to be due October 15, 1897, and to better secure the Savings Bank she had agreed to transfer all the collaterals and mortgages which the Griffin Banking Company held to secure her note to it, due November 1, 1897, for $450, after that note had been paid.     She then author-

ized the Griffin Banking Company to hand over and transfer to the Savings Bank of Griffin all other collaterals pertaining to her loan to it, after her note to it had been paid in full.   The trial of the case resulted in a verdict for the plaintiff, and a decree was had requiring the defendant to make and execute to the plaintiff title to the premises as prayed for.   Mrs. Johnston then submitted a motion for a new trial, which being overruled, she excepted.

1–3.  A charge to the following effect is, in the fourth ground of the motion for a new trial, alleged to have been error :  If the note of Gulledge was transferred to the bank as collateral security for the debt due the bank, and a part of the debt was the debt of Johnston, and a part of it the debt of his wife, then, if it could readily be ascertained from the testimony what part of the debt was the husband's and what part the wife's, the transfer of the note as security for part of the debt which was the wife's would be a valid transfer; and if it was transferred for the purpose of collateral security, and Gulledge paid it, such payment would be good, and the plaintiff would be entitled to a verdict.   No specific reason is alleged why this charge was erroneous.   Taken as an abstract proposition of law, the charge is sound.   In the case of *Jones* v. *Harrell*, 110 *Ga.* 373, this proposition was ruled to be law :  " If a married woman signs a promissory note the consideration of which is partly her own debt and partly the debt of her husband, the payee can recover, in a suit on the note, that portion which was based upon the debt of the wife, the amount of her debt and that of the husband being clearly shown by the evidence."   If it be true as matter of law that such recovery can be had, it must also be true that a promissory note belonging to the wife may lawfully be deposited as security for that part of the debt which is owed by the wife. When so deposited, the pledgee who takes it without notice stands upon the same footing as any other innocent purchaser without notice.  *Bonaud* v. *Genesi*, 42 *Ga.* 639.   Undoubtedly the Savings Bank would have had the right to institute an action in its own name to recover from Gulledge the amount of the note pledged as collateral, had it not been paid.   The principle was ruled, in *Houser* v. *Houser*, 43 *Ga.* 415, that if the original note secured had been paid after the commencement of a suit by the pledgee to recover on the collateral, and the holder of the collateral should proceed to a judgment thereon and collect the money, he would hold the same

as the trustee for the benefit of those legally or equitably entitled to it.   Mr. Colebrooke in his work on Collateral Securities, p. 176, states the rule as follows : "The pledgee is entitled to recover of the parties to such collateral note the whole amount of its face, holding any surplus for the benefit of persons who are entitled to it."   See cases cited in note 6 on that page.   So, then, if the Savings Bank was entitled to collect from Gulledge the amount of the collateral note which it held, and could compel Gulledge by suit to pay the same, certainly it was the duty of Gulledge to pay the note in the hands of the pledgee when it matured.   When he had so paid it, the obligation into which he had entered with Mrs. Johnston would have been fully performed in accordance with their contract, and he would have been entitled to have a conveyance of the land.   It must therefore be ruled that there was no error in the charge complained of.

4. Another complaint is that the court erred in refusing a stated request to charge.   It does not affirmatively appear that the request to charge was made in writing; indeed, the record shows that it was made by counsel for defendant, "in their argument on the trial of the case;" from which it is clearly inferable that it was not in writing.   The judge was fully justified in ignoring a request not in writing, and an assignment that the judge erred in refusing such request will not be considered by this court.

5. The only remaining question for us to determine is whether the verdict was supported by the evidence.   We think it was, for the reasons already given.   It is not apparent to us that the note held by the Savings Bank was the debt of the husband, and not the debt of the wife.   Certainly it is true that she had no connection with or liability for the debt which her husband owed Blakely ; nor, as we understand it, does the note to the Savings Bank represent this debt.   It makes no difference who negotiated with the bank for the loan which was made.   It is uncontradicted that the note for $209.77, signed by Mrs. Johnston, her husband, and son, was discounted by the bank, and the proceeds placed to the credit of Mrs. Johnston.   For all practical and legal purposes this was her money.   If it was, then the note which was discounted was her debt; and while it may at sometime have been her husband's debt, yet, as she received the proceeds, it was her debt.   This money she saw fit to check out, and if she checked it out and permitted it

to go into the hands of her husband, and with these proceeds he paid the debt of Blakely, it by no means resulted that the note to the bank was rendered invalid. She was at perfect liberty to do what she pleased with the money. She had full control of it. She could have given it to her husband had she wished. In any event, as she signed the note to the bank, and obtained possession of the money, the debt was as much her own as it was that of her husband.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*