## STAFFORD *v.* BIRCH.

No. 13015. NOVEMBER 14, 1939. REHEARING DENIED DECEMBER 5, 1939.

*W. E. & W. G. Mann,* for plaintiff.

*W. B. Robinson,* for defendant.

DUCKWORTH, Justice. Mrs. Sallie Stafford filed suit against C. V. Birch, to enjoin the exercise of a power of sale contained in a security deed, and to cancel the deed and the notes secured thereby. The petitioner alleged, that she is a married woman; that on September 18, 1937, she executed to the defendant, as security for her husband's debt, two promissory notes aggregating $340, and a security deed to property which she owned; that on said date her husband executed to the defendant the two promissory notes and the security deed, which she signed as security "for the purpose of having the defendant sign an appearance bond for

Manuel Stafford in Whitfield superior court, and as security for said defendant on said bond;" that the defendant had not paid off any forfeiture on the appearance bond, but if he had paid any such forfeiture it was the husband's debt and obligation to secure him; and that the defendant was advertising her property for sale under the security deed. The defendant filed an answer alleging, that the notes and security deed represented an original undertaking on the part of the petitioner; that the petitioner's husband signed the deed and notes merely as surety for the petitioner; and that the appearance bond had been forfeited by the failure of Manuel Stafford to appear and answer the criminal charges against him, and in consequence thereof the defendant had paid stated sums on the bond. Trial of the case before a jury resulted in a verdict for the defendant. A motion for a new trial was overruled, and the plaintiff excepted.

The only questions presented are those raised by the general grounds of the motion for a new trial. The evidence was substantially as follows: The plaintiff and her husband went to Dalton in September, 1937, to see their son, Manuel Stafford, who was in jail on a charge of larceny after trust. At the request of their son they went to the defendant to get him to sign a bond for his release from jail. The defendant signed the son's bond, which was for $300, and as security therefor took a note signed by plaintiff and her husband for $300. A lawyer for the son was hired, the defendant advanced his fee of $40, and the plaintiff and her husband gave the defendant their note for the amount of the lawyer's fee. The plaintiff had some property, but her husband had nothing. Both, however, signed a deed to the plaintiff's property for the purpose of securing the two notes to the defendant. The facts just stated appeared without dispute. There was evidence that the plaintiff was the one who induced the defendant to sign the bond. She testified that no debt of her husband was involved; that she told the defendant she owned this property and was willing to do whatever was necessary to get a bond for her son. "I was doing this myself, because Rufus, my husband, did not have anything and could not do anything about it himself. I was willing to do anything in the world to get this boy out of jail, and told Mr. Birch [defendant] and Mr. Dalton so." She employed the attorney for her son and arranged with Mr. Birch to pay the lawyer.

■ The evidence authorized, if it did not demand, a finding that the husband signed the notes and the deed as surety for the wife, and against the plaintiff's contention that the notes and the deed were signed by her to secure debts of her husband. "While a married woman may not contract a debt of suretyship that will bind her, she may, as an original undertaker, become liable for goods furnished to another from which she derives no personal benefit." *Freeman* v. *Coleman,* 86 *Ga.* 590 (12 S. E. 1064) ; *Finch* v. *Barclay,* 87 *Ga.* 393 (3) (13 S. E. 566) ; *Villa Rica Lumber Co.* v. *Paratain,* 92 *Ga.* 370 (17 S. E. 340). This principle is controlling in so far as it relates to the note for $40. The evidence authorized the inference that the plaintiff hired a lawyer for her son, and obtained the money with which to pay the lawyer from the defendant by giving him a note for $40 secured by a deed to land which she owned. This was an original undertaking on her part, by which she could properly bind herself and her separate estate.

■ The note for $300 presents a different question. The plaintiff, a married woman, wanted to obtain the release of her son from jail. A surety on the son's bond was required, but under Code, § 53-503, she could not act as such surety. In this situation she induced the defendant to sign the son's bond as surety, by giving the defendant a note and security deed to secure him in case he should suffer liability by reason of such bond. Could the plaintiff, by indirection, bind her property to secure the release of her son? It is contended by the defendant that this question was not presented by the pleadings, but we can not agree to this contention. While the petition was devoted mainly to an attack upon the notes and security deed on the ground that they were given to secure debts of her husband, it also stated the circumstances under which these instruments were given, and alleged that they were given "as security for said defendant on said bond." In view of these allegations and the prayer for general relief, we can not say that the pleadings were insufficient to raise the question. There is nothing in the record to show that this question, which is argued in the brief of plaintiff in error, was not considered by the trial court. We think this case is controlled on principle by previous decisions of this court. In *Gross* v. *Whitely,* 128 *Ga.* 79 (59 S. E. 94), where it was held that a wife could not pledge her property for a loan contemporaneously made to the husband, it was said: "It is not the

form of suretyship, nor whether the liability as surety is general, or only limited to the value of the pledged separate estate, which the law condemns. The spirit and purpose of the statute is to prevent the appropriation of the wife's property to the payment of a secondary or collateral liability." In *National Bank of Tifton* v. *Smith*, 142 *Ga.* 663 (83 S. E. 526, L. R. A. 1915B, 1116), it was held that an accommodation paper given by a married woman for the purpose of enabling the payee, her son, to secure an indorsement for his note, which fact was known to the indorser, violated the restriction against binding her separate estate by a contract of suretyship. In the opinion it was said: "An accommodation indorser is a surety, and the statute forbids a married woman to make a contract of suretyship. A married woman can not make herself liable by becoming an accommodation indorser, and the spirit of the statute outlaws a contract fixing an ultimate liability for the same debt which she can not primarily contract. The whole arrangement contemplated a loan to the son on the faith of the mother's suretyship. If the son had borrowed the money from the bank on a note with his mother, her relation to the bank would have been that of a surety, and her indorsement would have been ineffectual to bind her to pay her son's debt, on account of the prohibition of the statute. Instead of undertaking to contract directly with the son's creditor, she contracted with one to assume a relation of suretyship on the faith of her promise that the ultimate liability of her son's default would be borne by her. The practical effect of the transaction and the common intent of the parties to it was that if the son failed to pay the debt the mother would be answerable for his default. It is true that the mother was not liable to the son's immediate creditor, but her contract was designed to make her liable for the same debt when it was paid by the indorser." While in the instant case the plaintiff was not liable as surety on the original bond, the effect of her contract with the defendant was to make her ultimately bear any liability under the bond. Under the decisions from which we quoted, we hold that a married woman could not thus by indirection bind her separate estate, and that such a transaction falls within the law's condemnation of contracts of suretyship by a married woman. See *Sharpe* v. *Denmark*, 143 *Ga.* 156 (84 S. E. 554, Ann. Cas. 1917B, 617) ; *Milton* v. *Setze*, 146 *Ga.* 26 (90 S. E. 469). The court erred in overruling the motion for new trial.

■ The remaining question to be determined is whether the security deed was rendered entirely void by the inclusion of the invalid note. The answer depends upon whether it was an entire or severable transaction. "A contract may be either entire or severable. In the former, the whole contract stands or falls together. In the latter, the failure of a distinct part does not void the remainder. The character of the contract in such case is determined by the intention of the parties." Code, § 20-112. The consideration for the deed was certainly severable. It was given to secure two notes, one absolute and the other conditional. The $300 note recited that it was to be of no effect if the plaintiff's son complied with the terms of his bond and appeared in court to answer the charges against him. It appears from the recitals of the deed that the parties intended that the deed should secure the $40 note in any event, but should secure a note for $300 only under certain conditions. These facts were sufficient to show that the contract was severable. See *Bearden Mercantile Co.* v. *Madison Oil Co.*, 128 *Ga.* 695 (58 S. E. 200). The contract being severable, the invalidity of the conditional note did not render the deed ineffectual in its entirety. Code, § 20-305; *Jones* v. *Harrell*, 110 *Ga.* 373 (2) (35 S. E. 690); *Johnston* v. *Gulledge*, 115 *Ga.* 981 (42 S. E. 354); *Lanier* v. *Olliff*, 117 *Ga.* 397 (2) (43 S. E. 711); *Scaife* v. *Scaife*, 134 *Ga.* 1, 4 (67 S. E. 408); *Colquitt* v. *Dye*, 29 *Ga.* App. 247 (3) (114 S. E. 643). This case is distinguished on its facts from *Campbell* v. *Trunnell*, 67 *Ga.* 518, *Mickleberry* v. *O'Neal*, 98 *Ga.* 42 (4) (25 S. E. 933), *Bond* v. *Sullivan*, 133 *Ga.* 160 (65 S. E. 376, 134 Am. St. R. 199), and *Cross* v. *Cordell*, 149 *Ga.* 383 (100 S. E. 365), in which absolute conveyances by married women were held to be entire, and therefore invalid by reason of partial invalidity of the consideration; and from *Carlton* v. *Moultrie Banking Co.*, 170 *Ga.* 185 (152 S. E. 215), and *Magid* v. *Beaver*, 185 *Ga.* 669, 679 (196 S. E. 422), in which security deeds were held to be entire and void for the same reason.

*Judgment reversed. All the Justices concur.*