## Giddens v. Powell.

*Bill in equity to cancel a deed as a cloud upon title.*

108  621
135  458
108  621
137  467
108  621
141  679
108  621
143  667

1. *Conveyance of property of a married woman.*—A wife may with the written consent of the husband, sell and convey her land in payment of her husband's debt, but she cannot mortgage it, to secure his debt.

APPEAL from the Chancery Court of Lowndes.

Heard before Hon. JERE N. WILLIAMS.

The facts of this case are sufficiently stated in the opinion.

CLEMENTS & BREWER, and SAYRE & PEARSON for appellant.

J. C. RICHARDSON, *contra*.

COLEMAN, J.—The appellee, George N. Powell, filed the present bill for the purpose of having a deed of conveyance, executed by James McQueen and his wife, Jane McQueen, to the respondent, James T. Giddens, appellant, to certain eighty acres of land, cancelled as a cloud upon his title. The respondent filed a demurrer to the bill upon several specified grounds. The cause was not set down for hearing on demurrer, and the court does not seem to have considered it. They are not before us for consideration. We might add, however, that the particular grounds assigned might have been properly overruled. The two issues presented by the pleadings and those upon which the cause was determined, were, that the deed of conveyance to Giddens was intended to operate only as a mortgage, and second, that he was a purchaser for value, without notice that the complainant held a vendor's lien upon the land for a balance of unpaid purchase money due him for the land.

There is no controversy that the land at one time was the property of the complainant, that he sold it to Jane McQueen, the wife of James McQueen, and executed to her an absolute deed of conveyance, and that she owed an unpaid balance of purchase money at the time of the execution of the deed to James T. Giddens. Subsequent to the execution of the deed to Giddens, Jane McQueen and her husband, James McQueen, conveyed the lands to complainant in payment of the balance due him, which amount, by reason of accrued interest, was shown to be a fair equivalent for the land.

At the time and in connection with the deed to Giddens, he executed an instrument in which it was stipulated and agreed "that the said James McQueen or his wife shall have the right of redeeming said land at any time during the next five years on payment of seven hundred dollars and the legal rate of interest." Seven hundred dollars was the expressed consideration of the deed to Giddens.

The land unquestionably was the property of the wife. It is also admitted that the wife received no benefit whatever from the sale and conveyance, and that the entire consideration of seven hundred dollars was to be applied in payment of, and credited upon the debts of the husband. A wife may with the written consent of

[Giddens v. Powell.]

the husband sell and convey her land in payment of her
husband's debt, but she cannot mortgage it, to secure
his debt.   The wife and the husband both testify posit-
ively and unequivocally that the agreement was that the
land was to stand good for the seven hundred dollars,
and upon its payment by Jane McQueen, Giddens was
to reconvey to the wife.   It is contended, however, that
inasmuch as Giddens paid to one Wheeler three hundred
and seventy-five dollars, due from James McQueen and
secured by a prior mortgage on the same land, that fact
tends to show that there was a cash consideration, and
that to the extent of the payment to Wheeler, Giddens
would suffer injury, and would not have accepted a con-
veyance, which was to operate only as a mortgage.   Jane
McQueen and her husband deny that they requested or
accepted, as a part of the seven hundred dollars, (the
expressed consideration for the land), the payment of
McQueen's debt to Wheeler.   The evidence of Giddens
on this point, is not sufficient to overcome the other evi-
dence in the case.

We do not attach much weight to the testimony of
Brewer on this point.   It is true he drew the conveyance
from the McQueens to Giddens, but evidently he was not
present when it was executed, nor heard the terms to
which Mrs. McQueen assented, nor did he draw, and it
would seem did not know of, the written obligation of
Giddens, by which it was agreed that the land should be
redeemed upon payment with legal interest of the
amount of the consideration.

There is one other material fact testified to by James
McQueen which has passed unchallenged as true, and
which is entirely inconsistent with an absolute sale.   He
swears that the agreement with Giddens, was that the
stipulated rent, should be credited upon the purchase
price, but instead of doing so, Giddens credited the
amount upon an older debt.

There is an unexplained discrepancy between Giddens'
testimony, and a fact, clearly established, which weak-
ens the force of his evidence.   He swears that he cred-
ited the mortgage to him, from the McQueens with $450.
and he paid the debt of the McQueens to Wheeler, with
$250. making the $700. allowed as the consideration of
the purchase of the land.   Now it is established beyond
all controversy, that Wheeler's debt was $375. which

was paid by the check of Brewer, which would leave a balance of only $325. How $375. could have been paid to Wheeler and then a balance of $450. remain to be credited on the mortgage, is not explained. If it were necessary, many other facts might be cited, which tend to support the averment that the conveyance was intended as a mere security for seven hundred dollars due by the husband. This was the conclusion of the chancellor, and the facts lead us to the same result. This view dispenses with the consideration of the other controverted fact, which is that Giddens purchased with notice.

Affirmed.