128   157
e137  467

128   157
143   615

# First National Bank of Gadsden v. Moragne.

*Action for Money had and received.*

1. *Action for money had and received; when can not be maintained.* In an action by a married woman against a bank for money had and received, the following facts were disclosed: A check was drawn, payable to the order of the plaintiff, and delivered to her husband. The husband presented the check at the defendant bank unindorsed by the payee. Upon his attention being called to this fact, the husband, pretending to have authority to indorse the paper for and in the name of his wife, wrote on the back of the check his wife's name *per* himself. Thereupon the defendant bank cashed the check and put the money to the credit of the husband. Subsequently the money so put to his credit was drawn out by the husband and used in the payment of his own debts and for other purposes of his own. The husband was without authority to indorse the check for and in the name of his wife. The check was given by the lender of the money to the wife, and the money collected on it was the proceeds of a loan which was

secured by a mortgage upon the wife's property, which mortgage was duly executed by her. The purpose of the wife in obtaining the loan was to raise money to pay off her husband's debt and enable him to carry on his business, and she knew that her husband had gotten the money on the loan for such purpose. *Held*: That the wife can not maintain an action against the bank for money had and received.

APPEAL from the City Court of Gadsen.

Tried before the Hon. JOHN H. DISQUE.

This was an action brought by the appellee against the appellant. The facts of the case are sufficiently stated in the opinion.

The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evidence the court rendered judgment for the plaintiff. The defendant appeals, and assigns as error the rendition of judgment in favor of the plaintiff.

AMOS E. GOODHUE, for appellant.—The question in this case is simply this: Can the payee of a check whose endorsement has been forged or made without authority, and when payment has been made by the bank on which it was drawn upon such unauthorized endorsement, maintain a suit against the bank to recover the amount of the check? The direct question involved was decided in the case of *First National Bank v. Whitman*, 94 U. S. 343. See also *Freeman v. Savannah Bank*, 88 Ga. 255; 5 Am. & Eng. Ency. of Law (2d ed.), title, Checks, 1076; *National Commercial Bank v. Miller*, 77 Ala. 168. The true principle is that when the bank pays a check upon a forged endorsement, it is not entitled to charge the check against the depositor but is liable to the depositor, who is the proper party to sue.—*Shipman v. Bank of New York*, 27 N. E. Rep. 373; *Hatton v. Holmes*, 31 Pac. Rep. 1131; *Rice v. Citizens' National Bank*, 51 S. W. Rep. 454.

GEORGE D. MOTLEY, *contra*.—The action for money had and received, is said to be a liberal and equitable action, and lies whenever the defendant has money which *ex æquo et bono*, belongs to the plaintiff,—1 Brick. Dig. 140, § 72.

[First National Bank of Gadsden v. Moragne.]

It has been held that if a check be drawn for the exact amount on deposit it will operate as an equitable assignment of the debt due from the bank to the drawer, and give the holder a right of action against the bank improperly refusing to honor the same.—5 Am. & Eng. Ency. of Law (2d ed.), 1064; *Covert v. Rhodes*, 48 O. St. 73; *Hawes v. Blackwell*, 107 N. C. 201; *Carr v. National Security Bank*, 107 Mass. 49; *Kingman v. Perkins*, 105 Mass. 111.

McCLELLAN, C. J.—This is an action by Mrs. Moragne against the bank for money had and received to the use of the plaintiff. The bank cashed a check drawn on it and to her order for $2,800 and put the money to the credit of J. B. Moragne, the payee's husband who afterwards checked it out in payment of his own debts or for other purposes of his own. The check was presented to the bank by J. B. Moragne. When presented it had not been endorsed by Mrs. Moragne. The cashier called J. B. Moragne's attention to this and he thereupon, professing to have authority to endorse the paper for and in the name of his wife, wrote on the back thereof "Eula L. Moragne, per J. B. Moragne," and thereupon the check was honored by the bank and the amount of it passed to the credit of J. B. Moragne, as we have said. Moragne now swears that he had no authority from his wife to endorse said check. Mrs. Moragne testified that she did not know of the existence of said check until a month or so after its payment by the bank in the way we have detailed, and that she gave her husband no authority to endorse it. The trial was by the judge of the city court without a jury. He found for the plaintiff and judgment was entered accordingly. Upon a critical examination and consideration of the evidence adduced below and set out in full in the transcript before us we are led to a different conclusion. The money involved here was the proceeds of a loan made by Rexinger to Mrs. Moragne secured by a mortgage upon her property duly executed by her. The purpose of this transaction on the part of Moragne and his wife was to raise money to pay off his debts and enable him to carry on his business. The testimony of

J. B. Moragne on the trial shows this. Mrs. Moragne herself testifies that she gave Rexinger the mortgage, and that she knew that her husband had gotten the money on it to pay his debts. The bill which she filed two years after the transaction to have the mortgage cancelled and which she swore to and which is here in evidence, shows that at the time she executed the mortgage she knew the money was to be used in the payment of J. B. Moragne's debts, and that her signature was obtained to that end; and it was upon that ground expressly and solely she sought to have the conveyance annulled. Then, too, she knew within a short time after the execution of the mortgage that money had been gotten by her husband upon it to be used in the payment of his debts, and for five years after such knowledge came to her she in no way asserted that this money had not been thus gotten and used according to her intention in executing the mortgage and with her consent. This quiescence long continued may not constitute ratification of the use to which the money was applied, but it is strong evidence to show that she in the beginning consented and intended that her husband should receive the fund and employ it on his own account. And so upon the whole evidence we conclude that the money received on the Rexinger mortgage was received by her husband with her consent to be used by him in the payment of his debts. And the money was so received and every dollar of it so applied. She may not have specifically authorized her husband to endorse the check delivered to him by Rexinger for the money loaned, but was a mere incident of the scheme to which she committed herself in the first instance. She may not have known that the loan was paid by means of a check; but with or without such knowledge and whether she in terms authorized J. B. Moragne to endorse and collect the check or not, she consented to that or any other means being resorted to in effectuating the loan when she executed the mortgage to Rexinger for the purpose of raising money for her husband and committed the details of the transaction to his control and management.

Finding that the money was used in accordance with her intent and purpose, it is immaterial in this case whether she specially authorized or even knew the several steps that were taken to secure the money and to apply it to the end she sought to conserve. Her consent to its application to that end and for that purpose involves and includes her consent to all steps necessary or incident to such application. The mortgage to Rexinger may have been invalid in point of fact but that question is not involved here, (and it was held valid on bill filed to have it cancelled, it appearing in that case that the money was paid in accordance with her authorization to the husband for her and it not appearing that the mortgagee had any notice of its appropriation with her consent to his own debts, *Morange v. Rexinger*, 122 Ala. 667; *A. F. L. M. Co. v. Thornton*, 108 Ala. 254) ; but, on the contrary, Mrs. Moragne in this case affirms the validity of the instrument and claims the proceeds of the loan as her money from the defendant. Being her money, she had a right to give it away to her husband or anybody else, and to apply it by her own hand or through her husband directly to the payment of his debts; for while the wife may not become the husband's surety, and may not pledge her property to secure his indebtedness, and her property cannot be taken for his debts, it cannot be doubted that of her own volition she may apply it to the absolute payment of his debts.—*Hollingsworth v. Hill*, 116 Ala. 184. That in substance is precisely what Mrs. Moragne has done in respect of the money for which she now sues. It was with her consent and in consonance with her intention that the bank paid out this fund in settlement of J. B. Moragne's debts; and it would be monstrous to hold on these facts that the bank paid out the money in its own wrong, that for the practical purposes of this case it still holds the money and that this money *ex equo et bono*—in equity and good conscience—now belongs to her; and that she may recover it now although the bank has once fully paid it to her use, or, which is the same thing, to the uses appointed by her. She has no such

11

right, (*Hollingsworth v. Hill, supra*) ; and it should have been so adjudged in the court below.

The judgment of the city court will, therefore, be reversed, and a judgment will be here rendered for the defendant.

Reversed and rendered.