# Lunsford v. Harrison.

131  263
137  467
131  263
143  615

*Bill in Equity to Cancel Mortgage.*

1. *Husband and wife; surety for husband's debt; burden of proof upon wife seeking to avoid conveyance.*—Where a mortgage upon the separate property of a married woman, which shows upon its face that it was made to secure a debt due to the mortgagee by the married woman as principal and not as surety for her husband, is sought to be avoided and annulled by the wife, although she admits the execution of the mortgage, upon the ground that she executed it and the note which it was given to secure as surety for her husband, the burden of proving that the debt secured by the mortgage was solely the debt of her husband and that she was his surety in the execution of the instrument, is upon the married woman.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. J. C. CARMICHAEL.

The facts of the case are sufficiently stated in the opinion.

SAMUEL WILL JOHN, for appellant.—If the complainant established the truth of the allegations as set forth in her bill, she is clearly entitled to the relief prayed for, but which was denied her by the chancellor.—Code, § 2529; *Boylaston v. Farrior,* 64 Ala. 565; *Heard v. Hicks,* 82 Ala. 485: *Armstrong v. Connor,* 86 Ala. 351.

It does not matter in what form or shape the evidences of debt or the conveyance or conveyances of the property are fashioned, nor how circuitous it may be, the real nature of the transaction will be sought for and if it clearly appears that the wife's property is the security for the husband's debt, she will be relieved, and the conveyance of her property, based on such consideration, will be stricken down, and held to be void as to her, though it remains valid as to any property of the husband therein conveyed.—*Heard v. Hicks,* 82 Ala. 485; *Lansden v. Bone,* 90 Ala. 446-9; *Hawkins v. Ross,* 100 Ala. 459; *McNeil et al. v. Davidson,* 105 Ala. 657; *Clement v. Draper, Mathis & Co.,* 108 Ala. 211; *Richardson v. Stephens,* 114 Ala. 238; *Richardson v. Stephens,* 122 Ala. 301. See also *Orr v. White,* 106 Ind. 341; *Bank v. Bank,* 101 U. S. 240; *Vaal v. Hurt,* 63 Ga. 730; *Way v. Peck,* 47 Conn. 23.

CABANISS & WEAKLEY, *contra,* cited *Mortgage Co. v. Thornton,* 108 Ala. 258; *Gafford v. Speaker,* 125 Ala. 498; *Hamil v. Mortgage Co.,* 127 Ala. 90.

DOWDELL, J.—Susan Lunsford and her husband each owned in their respective rights vacant lots on 21st Street, between Second and Third Avenues in the city of Birmingham, Ala. These lots were contiguous and adjacent to each other. On these lots her said husband, George Lunsford, built a large brick hotel, known as the Lunsford Hotel. On this property the appellant Susan Lunsford and her husband gave to appellee a mortgage to secure the payment of the loan of $25,000 made by appellee. The present bill was filed by Susan Lunsford on July 28th, 1895, seeking to have said mortgage executed by her and her husband on their property cancelled in so far as it covers her portion of the said

property, upon the ground, as alleged in her bill, that she executed the mortgage merely as a surety for her husband, George Lunsford. The cause was submitted upon the pleadings and proof for final decree, and upon the chancellor's finding upon the facts he dismissed complainant's bill, and from this decree the present appeal is prosecuted.

The question here presented is purely one of fact. The law of the case is simple and without trouble. If the complainant executed the mortgage merely as surety for her husband in obtaining the loan, then, under the statute which provides that the wife shall not become surety for her husband, the mortgage as to her would be null and void. The defendant denies the allegations of the bill, upon which complainant rests her equity and claim for relief, and upon this issue, so made, the burden of proof is upon the complainant.—*Gafford v. Speaker*, 125 Ala. 498; *Hamil v. Mortgage Company*, 127 Ala. 90.

The complainant relied upon her own testimony, given in two separate depositions, and the testimony of her son-in-law, J. R. Copeland, and her son, W. G. Lunsford. The last two named witnesses did not claim to have any personal knowledge as to how and beween whom the loan was made, and their testimony simply tended to show that Mrs. Lunsford did not need the money, and that Mr. Lunsford did need it; and that he used it after it was borrowed.

If the loan in fact was a joint loan to Mrs. Lunsford and her husband, it is wholly immaterial and unimportant whether Mrs. Lunsford needed the money, or whether Mr. Lunsford used it after it was borrowed. *Mortgage Company v. Thornton*, 108 Ala. 258; *Gafford v. Speaker, supra; Hamil v. Mortgage Company, supra.* And in this connection, it may be further stated that it is unimportant whether the application for the loan was made orally or in writing, or whether Mr. and Mrs. Lunsford were both present at the time the application was made for the loan, if the application as made was for a joint loan and a joint loan in fact was made.

The defendant, in support of his answer, gave his own deposition, and had examined as witnesses in his be-

[Lunsford v. Harrison.]

half B. Steiner and J. W. Bush, who were instrumental in securing the loan for the borowers, and he also offered in evidence the bonds and coupons evidencing the loan, the mortgage securing the same, the abstract of title, the opinion of J. W. Bush, an attorney of law, on the title, a receipt for the money borrowed signed by the complainant and her husband, and certain letters which she had written.

The evidence without conflict shows that the defendant Harrison, at the time the loan was made by him in 1892 resided, and still resides, in the city of Philadelphia, Pa., and he has never been to Birmingham. The complainant, Mrs. Lunsford, never saw him, and the loan in question was obtained by Steiner Brothers of Birmingham and by J. M. Gummey & Sons of Philadelphia, their associates, both of whom were employed and paid by the Lunsfords. B. Steiner testifies, and there is no contradiction, that about June or July of 1892 Mr. George Lunsford came to the bank and asked him if he could obtain a loan for himself, Lunsford, and his wife on some property on 21st Street between 2nd and 3rd Avenues, to be known as the Lunsford building, and which is the property here in controversy; that he informed Mr. Lunsford that he did not have any one right there and then who would take such a big loan, but that he would communicate with some of his correspondents. At this time Steiner knew nothing about Mr. Harrison, the respondent, and had never heard of him. Steiner wrote J. M. Gummey of Philadelphia in reference to the loan, upon an agreement to divide his commission, to be paid by the Lunsfords, equally with Gummey, which he did. Gummey replied that he would take the loan and afterwards instructed that the bond and mortgage be made to C. C. Harrison. Steiner turned the papers over to J. W. Bush, the attorney, who was also paid by the borrowers, and he prepared the papers as directed. Mrs. Lunsford and Mr. Lunsford executed the papers, which are produced in evidence. The bond for $25,000, with interest coupon, was signed by both, she signing first. The bond recites that, "We, Susan Lunsford and George Lunsford, of the

county of Jefferson, State of Alabama, are indebted to Charles C. Harrison, of the city of Philadelphia, Pa., in the sum of $25,000," etc.; and again, "This bond * * * which was given for an actual loan for that amount of money to us at said county on the date hereof, and is secured by a first mortgage of even date herewith, duly executed by Susan and George Lunsford to said Charles C. Harrison, upon certain real estate in said county," etc. The mortgage was also signed first by Susan Lunsford, and recited that it was made and entered into by and between Susan Lunsford and her husband, George Lunsford, of the city of Birmingham, county of Jefferson, State of Alabama, the parties of the first part, and Chares C. Harrison, of the city of Philadelphia, and State of Pennsylvania, party of the second part, and further recited that, "whereas the said parties of the first part have this day borrowed of the party of the second part the sum of $25,000," etc. The bond and mortgage thus executed and containing these recitals were left with Steiner Bros., acting for and employed by the Lunsfords, to be sent forward for the purpose of obtaining the money from this defendant upon them. At or about the same time Mr. Bush sent forward the abstract, with his opinion upon the title, wherein he said: "I have also carefully prepared and had executed the bond, coupons and mortgage, and the same are in strict conformity with the laws of Alabama, and a valid and binding obligation on Susan and George Lunsford." The principal and interest notes and the said opinion of J. W. Bush were delivered to Mr. Harrison by Mr. Gummey in Philadelphia, and thereupon, and upon the faith of them, he parted with the said sum of $25,000, handing the same to Mr. Gummey to be remitted to Birmingham. At that time Mr. Harrison did not know either George or Susan Lunsford, and he accepted the loan upon the expert opinion of Mr. Gummey as to the value of the property, he having previously visited Birmingham. Thereupon Mr. Gummey sent the money to the New York correspondent of Steiner Bros., and telegraphed them to settle with Mr. and Mrs. Lunsford. Mr. Steiner sent a messenger out to Mr. Lunsford's house, and both of them came in to obtain the money,

and then and there settlement was made with both of them, as appears over their own signatures to the following letter there signed: "Birmingham, Ala., August 10, 1892. Messrs. J. M. Gummey & Son, Philadelphia, Pa. Gentlemen:—We are thankful to inform you that we have received the $25,000, for which we gave a mortgage dated August 1st, 1892, to Charles C. Harrison, on some property in this town on 21st St., lots 209-211. Yours very truly, (Signed) Susan Lunsford, George Lunsford." The signing of this letter is admitted by the complainant, although she had previously sworn that she did remember being present when the money was paid over, nor remember signing any receipt. Subsequently Mr. Lunsford died in the Summer of 1893 and Mrs. Lunsford, after the death of her husband, continued to pay interest on this loan, and, when not paid punctually by her, apologizing for not paying earlier and promising to pay in the future—never at any time setting up the claim she now asserts until the defendant, failing to collect his interest, began foreclosure proceedings. Furthermore, in order to raise more money and pay off interest on the $25,000, Mrs. Lunsford, in April, 1894, borrowed $4,000 from this defendant, securing the same by mortgage on other property of hers, and in that mortgage, which is also in evidence here, she recites expressly that she had, jointly with her husband, borrowed the $25,000 from Mr. Harrison, and she admits that this mortgage was read over to her before she executed the same.

It cannot be doubted from the evidence that the application as made to the respondent Harrison for the loan was for a joint loan to Mr. and Mrs. Lunsford and that this application was made to him through their agents and not his. In our opinion the overwhelming weight of the evidence tends to show that the loan was jointly obtained by Mrs. Lunsford and her husband; and the burden of proof under the issue being upon her to show that the loan was not joint, and that she was merely the surety of her husband, her unsupported testimony, especially when weighed in the light of her former admissions to the contrary, is not enough to overcome the

defendant's evidence in the case and falls short of discharging the burden of proof which rested upon her. After a most careful review of all the evidence, we are unable to see any reason for disturbing the finding of the chancellor upon the facts.

The decree of the chancellor will be affirmed.