(103 So. 682)

LESTER v. JACOBS.   (8 Div. 740.)

(Supreme Court of Alabama.   March 19, 1925.
Rehearing Denied April 16, 1925.)

1. Husband and wife ⬉232(3)—Evidence held to sustain finding that wife, signing note with husband, was not acting as surety for husband.

Evidence *held* to sustain finding that wife, in executing note jointly with her husband, was not acting as surety for debt of husband, which is forbidden by Code 1923, § 8272.

2. Witnesses ⬉379(1)—Prior statement, to be provable for purpose of impeachment, must be contrary or inconsistent with present testimony.

For prior statement of a witness to be provable for purpose of impeachment, it must be contradictory to and inconsistent with present testimony.

3. Witnesses ⬉383—Impeachment by contrary statements as to immaterial matters not permitted.

Witness cannot be impeached by showing contradictory statements by him as to immaterial matters.

4. Witnesses ⬉393(1)—Inconsistencies or contradictions between first and last testimony of witness may be introduced for purpose of impeachment after due predicate.

Where same case and subject-matter are involved in subsequent action, and there is material inconsistencies or contradictions between first and last testimony of a witness, the same may be given in evidence, after due predicate by proper cross-examination, or by due introduction of former testimony.

5. Witnesses ⬉393(1)—Omission of witness to testify on former trial as to certain facts not ground for impeachment where additional testimony not contradictory thereto.

Witness testifying to a certain fact is not to be discredited because of having omitted to testify to such facts at a prior hearing, where additional testimony given is not materially inconsistent with testimony formerly given, but it must be rem ipsam and affect credibility of witness.

6. Witnesses ⬉393(1)—Witness cannot be contradicted on matter of which he was not specifically questioned on former trial.

A witness cannot be contradicted on material matter as to which he was not specifically interrogated on former trial in which he testified.

7. Witnesses ⬉397—Testimony given on former trial admissible only for purpose of contradiction or impeachment and not as cumulative or original evidence.

Testimony given on former trial by witness at last trial is only admissible, after proper predicate, for purpose of contradiction or impeachment, and it is not competent as original or cumulative evidence.

8. Appeal and error ⬉231(3)—Court not reversed for admitting evidence which is admissible in part and incompetent in part, where objection is general.

When evidence, admissible for several purposes and incompetent in other respects, is offered without limitation and objection is general, court will not be reversed, whatever ruling in that respect may be.

———
⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**9. Trial ⬤85—Court may reject evidence entirely where admissible in part and incompetent in part and offered without limitation.**

Where evidence is admissible in part and incompetent in other respects, a general objection is insufficient, but objector must invoke action of court to set before jury the evidence with proper limitations, and, when not so invoked, court may reject evidence entirely, when offered without proper restriction or limitation.

**10. Trial ⬤84(1)—Court not required to seek proper objection to admissibility of evidence.**

Trial court is not required to cast about for proper objection to admissibility of offered evidence.

**11. Appeal and error ⬤205 — For action of trial court in rejecting evidence which is incompetent in part to be subject to review, purpose of such offered evidence must be stated.**

Where evidence is admissible in part and incompetent in part, offer of such evidence necessitates stating purpose or nature of evidence, to subject action of court to review in rejecting such evidence.

**12. Witnesses ⬤396(2)—Admission of whole of testimony of plaintiff's witness on former trial held proper, where portion introduced by defendant on cross-examination for purpose of impeachment.**

Where defendant, on cross-examination of plaintiff's witness, introduced part of former testimony of such witness without limitation and without declaring its purpose, but apparently in nature of impeachment after due predicate, *held*, that plaintiff was properly permitted to introduce the whole of such testimony on rebuttal.

**13. Trial ⬤253(6), 260(1)—Charges ignoring evidence in case properly refused.**

Requested charges, which ignored certain phase of the evidence and were covered by given charges, were properly refused.

**14. Trial ⬤253(10)—Requested instruction held properly refused as too limited.**

In action against husband and wife on promissory note, executed by them jointly, in which wife defended on ground that she was acting as surety for husband, and hence not liable under Code 1923, § 8272, defendant's requested charge that, if loan was made to the wife for own use and not for the use of her husband, verdict must be for wife, *held* properly refused as being too limited, in that wife may have procured money for completion of home, for use of both, or she may have used money she borrowed from an innocent third person by giving it to husband or in purchase or payment of his debt.

**15. Trial ⬤260(1)—Requested charge covered by oral instruction properly refused.**

Requested charge covered by oral instruction *held* properly refused.

**16. Husband and wife ⬤85(6)—Requested charge that, if any portion of money borrowed by husband and wife was used by husband, wife was not liable, held properly refused, as such loan would be valid to extent that it is joint or several indebtedness of wife.**

In action against husband and wife on promissory note, executed by them jointly, in which wife defended on ground that she was acting as surety for husband, in violation of Code 1923, § 8272, defendant's requested charge, directing verdict for defendant wife if any part of money was obtained for use of husband and plaintiff knew it was to be so used, was properly refused, since, where part of indebtedness is joint or several indebtedness of wife, it is valid to such extent.

**17. Trial ⬤244(2) — Charge giving undue prominence to portion of evidence properly refused.**

Requested charge, which gave undue prominence to particular or recited portion of evidence, was properly refused.

**18. Trial ⬤244(2), 260(9)—Refusal of requested charge held not reversible error, where subsequent charges gave same rule of law and charge singled out certain parts of evidence.**

In action against husband and wife on promissory note, executed by them jointly, in which wife defended on ground that she was acting as surety for husband, and hence not liable under Code 1923, § 8272, defendant's requested charge, that fact that plaintiff would not have made loan unless wife signed note and promised to pay would not render wife liable if she were in fact surety of her husband, *held* not reversible error, under Acts 1915, p. 815, where subsequent written and oral charges gave same rule of law and such charge singled out and gave undue prominence to certain parts of evidence.

Appeal from Circuit Court, Jackson County; W. W. Haralson, Judge.

Action on promissory note by Mrs. M. J. Jacobs against Beatrice H. Lester and W. E. Lester. Judgment for plaintiff, and defendant Beatrice H. Lester alone appeals. Transferred from Court of Appeals under section 6, p. 449, Acts 1911. Affirmed.

Charges 11 and 14, refused to defendant, are as follows:

(11) "Unless the plaintiff, Mrs. Jacobs, made the loan, the interest on which is here sued for, to the defendant Mrs. Lester, for her own use and not for the use of W. E. Lester, then your verdict must be for defendant B. H. Lester."

(14) "If you are reasonably satisfied from the evidence in this case that the loan was negotiated by W. E. Lester and used in the payment of his debts, then your verdict must be for defendant Beatrice H. Lester."

R. C. Brickell and R. E. Smith, both of Huntsville, for appellant.

When a witness is before the court, his testimony on former trial is admissible only

for the purpose of impeachment. Hooper v. Dorsey, 5 Ala. App. 463, 58 So. 951; Porter v. L. & N., 202 Ala. 139, 79 So. 605. Counsel argue the other questions raised, but without citing additional authorities.

D. P. Wimberly and Proctor & Snodgrass, all of Scottsboro, for appellee.

In this case there was prima facie evidence of a joint and several liability. The burden was on defendant to prove the contrary. Griffin v. Dawsey, 196 Ala. 218, 72 So. 32; 30 C. J. 743; Meyrovitz v. Levy, 184 Ala. 293, 63 So. 963; Sample v. Guyer, 143 Ala. 613, 42 So. 106; Interstate Bank v. Wesley, 178 Ala. 186, 59 So. 621; Hall v. Gordon, 189 Ala. 301, 66 So. 493; Maxwell v. Herzfeld, 149 Ala. 67, 42 So. 987; Gafford v. Speaker, 125 Ala. 498, 27 So. 1003; Myers v. Steenberg, 206 Ala. 457, 90 So. 302. Charge 14 was faulty and properly refused. Bley v. Lewis, 188 Ala. 535, 66 So. 454; Meyrovitz v. Levy, supra. Where the matters and parties are the same, testimony formerly taken is competent. Julian v. Woolbert, 202 Ala. 530, 81 So. 32. Charges 10 and 11 were refused without error. Hall| v. Gordon, supra; Warren v. Crow, 198 Ala. 670, 73 So. 989; First Nat. Bank v. Moragne, 128 Ala. 157, 30 So. 628; Mills v. Hudmon, 175 Ala. 448, 57 So. 739.

THOMAS, J. The suit was to collect interest on a promissory note executed by a married woman and her husband.

The question of fact for the jury was the suretyship vel non of the wife under the statute (Code 1907, § 4497; Code 1923, § 8272) and our decisions (Smith v. Rothschild & Co. [Ala. Sup.] 102 So. 206;[1] Alabama Chemical Co. v. Hall [Ala. Sup.] 101 So. 456;[2] Trost v. Beck, 211 Ala. 323, 100 So. 472; Leath v. Hancock, 210 Ala. 374, 98 So. 274; Little v. People's Bank of Mobile, 209 Ala. 620, 96 So. 763; Myers v. Steenberg, 206 Ala. 457, 90 So. 302; Morriss v. O'Connor, 206 Ala. 542, 90 So. 304; Smith v. Thompson, 203 Ala. 87, 82 So. 101; Street v. Alexander City Bank, 203 Ala. 97, 82 So. 111; Elba Bank & Trust Co. v. Blue, 203 Ala. 524, 84 So. 748; Bushard v. McCay, 201 Ala. 173, 77 So. 699; Trotter Bros. v. Downs, 200 Ala. 158, 75 So. 906; Griffin v. Dawsey, 196 Ala. 218, 72 So. 32; Warren v. Crow, 198 Ala. 670, 73 So. 989; Vinegar Bend Lbr. Co. v. Leftwich, 197 Ala. 352, 72 So. 538; Staples v. City Bank & Trust Co., 194 Ala. 687, 70 So. 115; Adams v. Davidson, 192 Ala. 200, 68 So. 267; Hall v. Gordon, 189 Ala. 301, 66 So. 493; Bley v. Lewis, 188 Ala. 535, 66 So. 454; Marbury Lbr. Co. v. Woolfolk, 186 Ala. 254, 65 So. 43; Meyrovitz v. Levy, 184 Ala. 293, 63 So. 963; Corinth Bank & Trust Co. v. King, 182 Ala. 403, 62 So. 704; Elkins v. Bank of Henry, 180 Ala. 18, 60 So. 96; Interstate Bank v. Wesley, 178 Ala. 186,

59 So. 621; Lamkin v. Lovell, 176 Ala. 334, 58 So. 258; Evans v. Faircloth-Boyd Merc. Co., 165 Ala. 176, 51 So. 785, 21 Ann. Cas. 1164; Maxwell v. Herzfeld, 149 Ala. 67, 42 So. 987; Gibson v. Wallace, 147 Ala. 322, 41 So. 960; Sample v. Guyer, 143 Ala. 613, 42 So. 106; Mills v. Hudmon & Co., 175 Ala. 448, 57 So. 739; Hanchey v. Powell, 171 Ala. 597, 55 So. 97; Lunsford v. Harrison, 131 Ala. 263, 31 So. 24; First National Bank v. Moragne, 128 Ala. 157, 30 So. 628; Gafford v. Speaker, 125 Ala. 498, 27 So. 1003; Henderson v. Brunson, 141 Ala. 674, 37 So. 549; Mohr v. Griffin, 137 Ala. 456, 34 So. 378; Richardson v. Stephens, 122 Ala. 301, 25 So. 39; Hollingsworth v. Hill, 116 Ala. 184, 22 So. 460; McNeil v. Davis & Son, 105 Ala. 657, 17 So. 101; Hubbard, Price & Co. v. Sayre, 105 Ala. 440, 17 So. 17; Giddens v. Powell, 108 Ala. 621, 19 So. 21; Clement v. Draper & Co., 108 Ala. 211, 19 So. 25), which forbid the wife, directly or indirectly, to become surety for the husband. Smith v. Rothschild & Co., ante, p. 276, 102 So. 206; Rollings v. Gunter, 211 Ala. 671, 101 So. 446.

The whole evidence bearing on the issue has been carefully examined, and it is our opinion that the defendant wife did not discharge the burden of proof that rested upon her under the plea of sole surety—to secure a debt entirely that of her husband. Gibson v. Wallace, 147 Ala. 322, 325, 41 So. 960.

It may be noted of the tests under the statute of suretyship of the wife for the husband that in Gibson v. Wallace, supra, the wife owned the farm, live stock, and agricultural implements; "the husband owned nothing, and this fact was known to Wallace," the mortgagee and payee. In Lunsford v. Harrison, 131 Ala. 263, 31 So. 24, the mortgage upheld was given for a joint debt "as to which the wife was an actual coprincipal." In Clement v. Draper & Co., 108 Ala. 211, 19 So. 25, and Mills v. Hudmon & Co., 175 Ala. 448, 57 So. 739, the questions were whether the debt secured by the mortgage being foreclosed, "or any part of it, was the debt of the wife," and it was held that if any distinct portion of the debt was exclusively the husband's, "the wife's security obligation would be null and void to that extent and no further." In Mohr v. Griffin, 137 Ala. 456, 34 So. 378, the lands were those of the wife, and she owed for the purchase money, the husband cultivated the same under the lease from the wife and incurred an indebtedness, and it was held the wife may make a bona fide conveyance of her lands to a third person in payment or purchase of the husband's debts. The case of Sample v. Guyer, 143 Ala. 613, 42 So. 106, was based on a conveyance reciting the fact of indebtedness as being that of the wife, and presumptively it spoke the truth. In Meyrovitz v. Levy, 184 Ala. 293, 63 So. 963, assumpsit was main-

[1] Ante, p. 276.    [2] Ante, p. 8.

tained on notes executed by the husband and wife, and the burden of proof was declared to be upon the wife to show she signed merely as a surety. Warren v. Crow, 198 Ala. 670, 73 So. 989, and Gordon Hall v. Gordon, 189 Ala. 301, 66 So. 493, sustained the suits of creditors where money was borrowed from one not the husband's creditor and who did not know the purpose was to pay the husband's debts. In Griffin v. Dawsey, 196 Ala. 218, 72 So. 32, the instrument challenged and sustained purported to be a joint obligation to obtain funds to erect a home for the family of the obligors. And in Bley v. Lewis, 188 Ala. 535, 66 So. 454, there was evidence tending to show that a sum paid by the mortgagors was to satisfy a prior mortgage given by the wife on the land to a syndicate, and formed a part of the indebtedness for the security of which the mortgage which was challenged was given. In Smith v. Rothschild & Co. (Ala. Sup.) 102 So. 206,[1] the creditor negotiated a loan from a bank on the debtor's wife's land, and procured the transfer of the same and it was foreclosed; held, not a bona fide purchaser of the mortgage from the bank taking the mortgage in good faith.

Under the plea of the defendant wife, did Mrs. Jacobs lend the $10,000 to the husband alone, and did the wife sign as surety only for such debt of the husband?

The evidence was in conflict on foregoing issues of fact. The husband testified that the wife only signed as surety, and that he procured, and the loan was made to him. The appellant testified she did not tell Mrs. Jacobs that she was only signing the note as surety for the husband. She declared that this was not discussed. Appellee's version of the contract is thus stated:

" * * * On the 6th of January they (the husband and wife) came one morning tolerable early, and they got out and came in, and we talked awhile; and they commenced talking about me letting them have the money, and I told Mrs. Lester I thought they were going to make me a mortgage for the money, to fix me a mortgage, and she said: 'No, my note is as good as my word, and my word is as good as a mortgage, and I will never sign another mortgage on my land.' So I thought it should be as good, and as I had promised to let them have the money, I would go on and let them have it, thinking it would be all right. I let them have the money. Judge Lester had the note in his pocket. He took it out of his pocket and filled it out, and I asked Mrs. Lester to sign it, and she signed it. Then Judge Lester signed it. (Witness was here handed the note sued on.) That is the note; I reckon it is. Nothing has been paid on it. I am not positive that either of them told me what they wanted with this money. I just thought from what they said that they were getting the money to build with as they were fixing to build; they did build. The impression they left on me is that is what

they wanted with the money. I could not state that positively. I do not remember that Judge Lester or Mrs. Lester either said anything about paying any debts they owed."

The appellee is corroborated by Mrs. Eula Clay Eustace, who said:

"Before I was married, I was Eula Clay, a daughter of Alec Clay. Mrs. Jacobs is my mother. I was present at the time Judge and Mrs. Lester came up to my mother's for some money. I was in the room at the time the transaction was had. They came down one morning some time between 10 and 12 o'clock, I think. They said they came for the money, and Mama insisted on a mortgage, and Mrs. Lester said: 'No, she would not sign any mortgage to her property any more.' She said her word was as good as a note, and her note good as a mortgage; and they said something about wanting $15,000, and Mama told them she could only let them have $10,000, and they filled the note out, and Mrs. Lester signed it first and then Judge Lester signed it. They were both talking for the money; I think one about as much as the other. Mrs. Lester does very well as a talker. She said her word was as—a note and her note as good as a mortgage, and signed the note first. I remember Judge Lester being there prior to that time, I think it was in November, and said they wanted to get some money; just said they wanted to get some money; I don't think he used any particular name. On that occasion of getting this money, I don't remember hearing Judge Lester say anything about wanting this money to pay off security debts or anything of that kind. I don't think they said what they wanted with the money; but they were speaking of their new home and the mansion all the time they were there. They were building a mansion at that time. I think they have completed it now. I don't know where this money went, whether it went into that mansion or not."

[1] The conclusion of the jury upon the evidence was correct.

Assignments of error are based on the overruling of appellant's objection to the introduction by plaintiff, in rebuttal, of parts of the transcript of the testimony of Mrs. Eustace given on the former trial of this case.

[2, 3] A prior statement of a witness, in order to be provable for the purpose of impeachment, must be contradictory of or inconsistent with his testimony. Helton v. A. M. R. Co., 97 Ala. 275, 12 So. 276; Cooper v. State, 88 Ala. 107, 7 So. 47; Cotton v. State, 87 Ala. 75, 6 So. 396. In Southern Ry. Co. v. Dickens, 161 Ala. 144, 151, 49 So. 766, it was held there was no error in sustaining objections to questions propounded on cross-examination which pertained to Dickens' testimony in distinct and previous actions by him against the defendant company, and "it not appearing that the subject-matter was the same," such inquiries being "immaterial matters." The result there announced followed under the general rule that a witness can-

[1] Ante, p. 276.

not be impeached by showing contradictory statements by him as to immaterial matters.

[4-6] The instant question was raised as to the same subject-matter and parties, in the same case If, therefore, there were material inconsistencies or contradictions between the first and the last testimony of the witness, after due predicate the same might be given in evidence by her proper cross-examination as to the matters, or by a due introduction of that part of her former testimony that was in nature of impeachment within the rule. It should further be stated that a witness who has testified to certain facts is not to be discredited because of having omitted to testify to such facts on a prior hearing or trial, where the additional testimony as given is not materially inconsistent with or contradictory of the testimony formerly given; it must be rem ipsam and affect the credibility of the witness. People v. Lyons, 51 Mich. 215, 16 N. W. 380; State v. Felix Robinson, 52 La. Ann. 616, 27 So. 124; State v. McElmurray, 3 Strob. (S. C.) 33. The witness is not to be contradicted upon a material matter of which he was not specifically interrogated upon the former occasion or trial in which he testified. 40 Cyc. p. 2705.

A further application of the rule from other jurisdictions is that if a witness acknowledges to have made them, the prior statements admitted by him to have been made "should not be permitted to go to the jury as cumulative evidence against the accused." State v. Reed, 49 La. Ann. 709, 21 So. 732; State v. Felix Robinson, supra. That is, they should be limited to the purpose of impeachment.

[7-11] The general rule in this jurisdiction is that the testimony given on a former trial by a witness at the last trial is only admissible, after a proper predicate, for the purpose of contradiction or impeachment; it is not competent as cumulative or original evidence. Porter v. L. & N. R. Co., 202 Ala. 139, 79 So. 605; Corona Coal & Iron Co. v. Callahan, 202 Ala. 649, 81 So. 591; Yarbrough Turpentine Co. v. Taylor, 201 Ala. 434, 78 So. 812; Thompson v. Richardson, 96 Ala. 488, 11 So. 728; Hooper v. Dorsey, 5 Ala. App. 463, 58 So. 951. When evidence is admissible for one or more purposes within the issues of the pleadings, and incompetent in other material respects, and is offered without limitation or restriction to the purpose for which it is admissible, and the objection is general, the court will not be reversed; whatever the ruling in that respect may be. Western U. T. Co. v. Favish, 196 Ala. 4, 71 So. 183. Being admissible for a particular purpose, the court cannot, by a general objection to it, be placed in error for receiving the evidence. The duty is upon the objector to invoke the action of the court to set before the jury the evidence, with the proper limitations. Barfield v. Ev-

ans, 187 Ala. 579, 65 So. 928. And not being so invoked, the court may reject the evidence entirely; it being offered without proper restriction or limitation. Davis v. Tarver, 65 Ala. 98. The court is not required to cast about for the proper objection. Farley v. Bay Shell Road Co., 125 Ala. 184, 27 So. 770. The offer of such evidence necessitates the stating of the purpose, when so required by the court, or the nature of the evidence, to subject the action of the court to review in admitting or rejecting such equivocal evidence. Archer v. Sibley, 201 Ala. 495, 78 So. 849. There is analogy in the rule requiring the statement of ground, applied in Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 So. 158.

The testimony of Mrs. Eustace on this trial in her direct and cross examination, was admitted without objection or exception. In her direct examination she testified that Judge Lester had been to see the plaintiff *in November*, and that he said "they wanted to get some money," and witness did not think "he used any particular name." To this tendency of evidence contained in witness' direct examination, the defendant replied by eliciting the following on cross-examination:

"I don't remember Judge Lester telling mother what he wanted with the money *when he came in November the first time to get it;* he might have told her, but I don't think he did; I have no positive recollection about it." (Italics supplied.)

On redirect examination by plaintiff, the witness had her attention directed to the statement of Judge Lester when he first went to plaintiff, and she said "they wanted to borrow some money," and witness thought "he used the word 'they' "; she was not positive that he used any name; that Judge Lester adverted to the fact that "his crop would be good," and "they would bring Mrs. Lester down and make Mama safe." The witness added that Judge Lester did not say "he would make her (plaintiff) safe by a mortgage; he said they would make the paper safe." Immediately the defendant, by a recross-examination, elicited from the witness the following:

"I was a witness in this case before. My testimony was taken down then by Mr. Caldwell, just as he is doing now. I was asked on cross-examination, 'Were you present when Judge Lester came down in November and made arrangements for it?' and I answered, 'Yes, I was present then.' I was also asked, 'What did he say then?' and answered, 'Judge Lester came in and told Mother he wanted to see if he could borrow some money, and he and Mrs. Lester would make it safe.' I also stated: 'When he came back the last time he said he came for the money and he brought his wife along to make it safe.' That is what I testified before. I think they are the words I used. On that occasion, on that trial I stated, in reply

to the question, 'So he made out the note and your mother asked Mrs. Lester to sign it first, that is the whole transaction?' 'Yes, sir.' "

There was no limitation as to the purpose of this former testimony.

After the introduction of other evidence on both sides, the bill of exceptions recites:

"The defendant then rested."

"On rebuttal, the plaintiff introduced in evidence the transcript of the testimony of the witness Mrs. Eustace, on the former trial as follows"—setting out three questions and answers. to which objections were overruled, exceptions reserved, motions to exclude overruled, and exceptions thereto reserved.

The effect of this rebuttal evidence was that—

by her former testimony Mrs. Eustace remembered Mrs. Lester and Judge Lester came there and said "they came after the money they had spoken for"; that "they would take $15,000 if she (plaintiff) had it", if not, "they would make out with $10,000"; that Mrs. Jacobs "insisted on a mortgage, and Mrs. Lester says, 'Well, my word is as good as my note and my note is as good as my mortgage,' and went on to say, too, if they wanted money on 30 days' time they could get it for her."

"Q. You mean if she wanted it back? A. Yes, sir. * * * That is about all I remember that passed, except they filled out a note and my mother asked Mrs. Lester to sign the note first, and she signed it first."

And in reply to the question, "Didn't Mrs. Lester explain to your mother why she came to her [for] money?" the witness answered:

"She said that mother had always been so nice to her that she had rather get it from her [Mrs. Jacobs] than any one else; that they always borrowed money from my father, and they had rather get it from her, and she said she insisted on Mr. Butler coming to her for money and asking him why he did not come to her for money, that she had always been so nice to them about loans."

The grounds of objections and motions to exclude this testimony by plaintiff were that it was not in rebuttal, called for illegal, irrelevant and immaterial testimony and was not offered by way of corroboration or impeachment of the witness. The last ground of objection made was not observed by defendants when they offered parts of the same former testimony of that witness in this cause.

In justification of the admission of plaintiff's said rebuttal evidence is cited Julian v. Woolbert, 202 Ala. 530, 81 So. 32, which is not an apt authority. The question there was the status of a deposition taken in chancery prior to an amendment.

[12] If the defendants had admitted parts of Mrs. Eustace's former testimony without limitation and in the nature of original evidence, a reply in like character was justified in Bank of Phœnix City v. Taylor, 196 Ala. 666, 72 So. 264; Gibson v. Gaines, 198 Ala.

583, 73 So. 929. Though the purpose of said evidence was not declared (Western U. T. Co. v. Favish, 196 Ala. 4, 13, 71 So. 183), the context showed it to be in the nature of impeachment, after due predicate (City of Tuscaloosa v. Hill, 14 Ala. App. 541, 69 So. 486). The witness was thereafter subject to reexamination by plaintiff, to give her an opportunity to explain what she did say and acquaint the jury of the nature and extent of her former examination. The plaintiff had this right and was in justice to be accorded the witness as to any apparent or inferential conflict in her two statements of fact under oath of the same subject-matter in the same suit. Had contradiction been sought by reference to former statements or transactions not under oath, the rule is well settled that—

" 'When part of a conversation, or part of a transaction, is put in evidence, the opposing party may rightfully call for the whole conversation or transaction.' Gibson v. State, 91 Ala. 64, 69, 9 South. 171, 174.

"Illustrations in point will be found in Allen v. State, 134 Ala. 159, 32 South. 318, and Norris v. State, 16 Ala. App. 126, 75 South. 718." Hill v. State, 210 Ala. 221, 225, 97 So. 639, 643.

This general rule has application to the rebuttal evidence offered by plaintiff.

[13] We will consider only the refused charges invoked by the argument. Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 So. 158. Charge requested as No. 14 by defendants ignores a phase of the evidence to the effect that the loan was negotiated by and made to both Mr. and Mrs. Lester; thus its refusal was justified. Bley v. Lewis, 188 Ala. 535, 66 So. 454; Meyrovitz v. Levy, 184 Ala. 293, 63 So. 963. However, it was covered by given charges.

[14] The refusal of charge 11 may be justified in the limitations contained in the words "for her own use and not for the use of W. E. Lester." She may have procured the money for the completion of the home for the use of the husband and wife; she may have used the money she borrowed from an innocent third person by giving it to the husband (Warren v. Crow, 198 Ala. 670, 73 So. 989), or in payment or purchase of the husband's debts (Hall v. Gordon, 189 Ala. 301, 66 So. 493).

[15] There was no error in refusing charge 9. It is covered by the oral instruction following:

"If the plaintiff merely loaned it to Mr. Lester and his wife going his security, she cannot collect it because the law forbids. If she was loaning it to both of them, if it was an independent debt both of Mr. Lester and Mrs. Lester, then she can collect."

Refused charge 10 is as follows:

"If any part of the money obtained on the note sued on was obtained for the use of W.

E. Lester, and the plaintiff, Mrs. Jacobs, knew that it was to be so used by him, then your verdict should be for the defendant Beatrice H. Lester."

[16] The charge instructs for a verdict for defendant Beatrice H. Lester if any part of the money was obtained for the use of W. E. Lester and the plaintiff knew that it was to be so used by him. Where a part of the indebtedness is the joint or several indebtedness of the wife, it is valid to such extent. Mills v. Hudmon & Co., 175 Ala. 448, 57 So. 739; Bley v. Lewis, 188 Ala. 535, 66 So. 454. The charge was properly refused.

[17] Refused charge 8 singles out and gives undue prominence or emphasis to the particular or recited portions of the evidence and was properly refused. Miller v. Whittington, 202 Ala. 406, 411 (14), 80 So. 499.

[18] Refused charge 15 was:

"The fact, if it be a fact, that Mrs. Jacobs, the plaintiff, would not have made the loan unless Mrs. Lester signed the note and also promised to pay same, and signed her name first to the note, would not render her liable, if she was in fact the surety for her husband."

This charge was substantially covered by given charge 2, as follows:

"Under the law of this state, the wife cannot become the surety for the debt of her husband either directly or indirectly, and it makes no difference if the defendant B. H. Lester, the wife of defendant W. E. Lester, signed the note jointly with him and agreed to be jointly bound for the payment of the debt, if in fact the debt was that of defendant W. E. Lester, then your verdict should be for the defendant B. H. Lester."

And by the oral charge, saying:

"If this debt was the debt of Mr. Lester and this woman signed the note, Mrs. Lester, his wife, signed the note as security for her husband, then the note is void as to her, because, as I said to you, the wife could not bind herself or her property as security for her husband; it is expressly forbidden by our law. If, however, it was her debt as well as his, if it was the joint debt of both of them, and she was not acting as security when she signed the note but acting independently for herself and she and her husband, if they both made the note, then in that way both owed the debt, and this note is not void but is good, and the plaintiff could collect her interest. * * * So that from this testimony now you are invited to ascertain what was the real intention of the parties. That Mrs. Jacobs loaned this $10,000 there is no doubt, and no dispute about that; that Mr. and Mrs. Lester executed this note there is no dispute about that; that nothing has been paid on it there is no dispute. Now, whose debt was it? From all this testimony, gentlemen, whatever you find the truth to be, what was the real intention of Mrs. Jacobs and Mr. and Mrs. Lester about this money when Mrs. Jacobs loaned it? Was she loaning it to Mr. Lester and his wife going his security? If she was, she cannot collect now; it is lost as far

as Mrs. Lester is concerned. If it was loaned to both of them, if the debt was Mrs. Lester's, she was borrowing the money as well as the other man and she was acting for herself when she signed the note, then she is liable, and there should be a verdict for the plaintiff if it is that way. * * * This testimony is all here to help the jury to look at [it] in a common sense way in the light of your observation and experience, etc., to find out what really was meant; who Mrs. Jacobs was loaning the money to. If she was loaning as I said, to repeat again; it is not necessary to repeat again; you understand it, but I will repeat it again: If the plaintiff merely loaned it to Mr. Lester and his wife going his security, she cannot collect it, because the law forbids it. If she was loaning it to both of them, if it was an independent debt both of Mr. Lester and Mrs. Lester, then she can collect."

This, we think, under the issues made by the pleadings and under the evidence, substantially and fairly gives "the same rule of law" (Acts 1915, p. 815) as that embraced in refused charge 15. No reversible error intervened in the refusal of said charge.

It will be unnecessary to consider the rulings on the motion for a new trial. We have carefully examined the whole record, and find no error.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and MILLER, JJ., concur.

### On Rehearing.

THOMAS, J. The cross-examination of the witness W. E. Lester complained of was not an abuse of that right (the matter being largely in the discretion of the trial court); the facts so inquired about were not palpably irrelevant, immaterial, and prejudicial in view of the witness' statement, in response to the specific question by Mrs. Jacobs' counsel, that Mrs. Jacobs gave him the "check," payable to him, and the "savings certificate," the two aggregating $10,000, and that—

"I paid my debts with it; debts that I owed and security debts; debts that I was personally responsible for. My wife did not get any of that money; she had nothing to do with it except sign the note as my surety."

It is then recited:

"Plaintiff objected to the question what he did with the $10,000. Court overruled the objection saying it may be premature but will come in later and as well now as at any time."

We think the cross-examination was proper as an inference in explanation or rebuttal of said general statement of the witness on direct examination. We did not overlook the able argument of counsel in the respects indicated. In fact, the same was considered and deemed insufficient to show error. We

should perhaps have been more specific as to these rulings on the cross-examination adverted to; finding no error or abuse of judicial discretion in respect of the cross-examination, we passed the same without specific comment. It is sufficient to say the several objections and exceptions are again considered and found to be without merit. The same have been considered in detail by the judges in conference, and no error is found. Middleton v. W. U. T. Co., 197 Ala. 243, 72 So. 548; Windham v. Hydrick, 197 Ala. 125, 72 So. 403; A. G. S. R. R. Co. v. Ensley T. & S. Co., 211 Ala. 298, 100 So. 542; Hilburn v. McKinney, 209 Ala. 229, 96 So. 61.

The jury were properly instructed under the evidence as to the issue to be tried. This we indicated in the opinion. Requested written charges fairly covered by the court's oral charge and defendant's given charges were properly refused. Williams v. Ala. F. & I. Co. (Ala. Sup.) 102 So. 136; [3] Vann v. State, 207 Ala. 152, 92 So. 182; Whistle Bottling Co. v. Searson, 207 Ala. 387, 92 So. 657; Stull v. Daniel Mach. Co., 207 Ala. 544, 93 So. 583; Nashville Broom & Supply Co. v. Alabama Broom & Mattress Co., 211 Ala. 192, 100 So. 132; Colledge v. Collum, 211 Ala. 203, 100 So. 143; Burge v. Scarbrough, 211 Ala. 377, 100 So. 653; Gen. Acts 1915, p. 815; Code 1907, § 5364; Code 1923, § 9509. Moreover, refused charge 15 singles out certain parts of the evidence and gives undue prominence thereto.

The application for rehearing is overruled.